**Fill in this information to identify the case:**

Debtor 1  Yancy Aquino-Calayag
Debtor 2
(Spouse, if filing)
United States Bankruptcy Court  Northern District of Illinois
Case number: 19-07004

FILED
U.S. Bankruptcy Court
Northern District of Illinois
5/10/2019


EXHIBIT A

## Official Form 410
## Proof of Claim

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**
West Ridge Village Condominium Association
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
West Ridge Village Condominium Association
Name
Keay & Costello, P.C.
128 S. County Farm Road
Wheaton, IL 60187

Contact phone  630-639-8800
Contact email  ben@keaycostello.com

Where should payments to the creditor be sent? (if different)
Name

Contact phone
Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                Proof of Claim                page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
| 7. How much is the claim? | $ 2325.75    Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Association common expense |
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☑ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** Association lien<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ 187497.00<br>**Amount of the claim that is secured:** $ 2325.75<br>**Amount of the claim that is unsecured:** $ 0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) _____ %<br>☑ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                                    Proof of Claim                                    page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. Check all that apply: | Amount entitled to priority |
|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | $ _____ |
| | | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

### Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   5/10/2019
                   MM / DD / YYYY

/s/ Benjamin J. Rooney
Signature

Print the name of the person who is completing and signing this claim:

Name         Benjamin J. Rooney
             First name   Middle name   Last name

Title        _____

Company      Keay & Costello, P.C.
             Identify the corporate servicer as the company if the authorized agent is a servicer

Address      128 S. County Farm Road
             Number  Street
             Wheaton, IL 60187
             City   State   ZIP Code

Contact phone  630-690-6446        Email  ben@keaycostello.com

Official Form 410                  Proof of Claim                               page 3

# West Ridge Village Condo Assn
## MC Property Management Corp.
## 14224 McCarthy Road
## Lemont, IL 60439

Yancy Aquino Calayag
441 Churchill Drive
Elgin, IL 60124

Property Address: 441 Churchill Drive
Account #: 29329

| Description | Date | Amount | Balance | Note |
|---|---|---|---|---|
| Insurance Violation | 11/14/2018 | 25.00 | 749.28 | No Ins. Certificate |
| Late Fee | 11/30/2018 | 8.90 | 758.18 | Late Fee Processed |
| Legal Fee | 11/30/2018 | 50.00 | 808.18 | 11/23 Review FC Complaint |
| Assessment | 12/1/2018 | 208.53 | 1,016.71 | Assessment |
| Unit Owner Expense | 12/13/2018 | 75.00 | 1,091.71 | General Common Expense: ND |
| Insurance Violation | 12/13/2018 | 25.00 | 1,116.71 | No Ins. Certificate |
| Assessment | 1/1/2019 | 208.53 | 1,325.24 | Assessment |
| Insurance Violation | 1/16/2019 | 25.00 | 1,350.24 | No Ins. Certificate |
| Late Fee | 1/30/2019 | 15.16 | 1,365.40 | Late Fee Processed |
| Assessment | 2/1/2019 | 208.53 | 1,573.93 | Assessment |
| Insurance Violation | 2/15/2019 | 25.00 | 1,598.93 | No Ins. Certificate |
| Legal Fee | 2/28/2019 | 100.00 | 1,698.93 | 2/25 Review FC file/letter re judgment. |
| Late Fee | 2/28/2019 | 18.29 | 1,717.22 | Late Fee Processed |
| Assessment | 3/1/2019 | 208.53 | 1,925.75 | Assessment |
| *5-10-19 BK Legal Fees* | | *400.00* | *2,325.75* | *Letter & Proof of Claim* |

# West Ridge Village Condo Assn
MC Property Management Corp.
14224 McCarthy Road
Lemont, IL 60439

Yancy Aquino Calayag
441 Churchill Drive
Elgin, IL 60124

Property Address: 441 Churchill Drive
Account #: 29329

| Type | Date | Amount | Balance | | Description |
|---|---|---|---|---|---|
| Legal Fee | 1/29/2018 | 434.00 | 3,335.50 | | Prep acct summary/verify status with Sheriff. Prep docs for court. |
| Late Fee | 1/30/2018 | 20.51 | 3,356.01 | | Late Fee Processed |
| Assessment | 2/1/2018 | 208.53 | 3,564.54 | | Assessment |
| Insurance Violation | 2/13/2018 | 25.00 | 3,589.54 | | No Ins. Certificate |
| Late Fee | 2/28/2018 | 23.63 | 3,613.17 | | Late Fee Processed |
| Assessment | 3/1/2018 | 208.53 | 3,821.70 | | Assessment |
| Insurance Violation | 3/13/2018 | 25.00 | 3,846.70 | | No Ins. Certificate |
| Payment- CAB | 3/23/2018 | -3,293.12 | 553.58 | 2454 | 2454 |
| Late Fee | 3/30/2018 | 6.26 | 559.84 | | Late Fee Processed |
| Assessment | 4/1/2018 | 208.53 | 768.37 | | Assessment |
| Insurance Violation | 4/16/2018 | 25.00 | 793.37 | | No Ins. Certificate |
| Late Fee | 4/30/2018 | 9.38 | 802.75 | | Late Fee Processed |
| Assessment | 5/1/2018 | 208.53 | 1,011.28 | | Assessment |
| Payment- CAB | 5/10/2018 | -1,001.90 | 9.38 | 2459 | |
| Legal Fee | 5/14/2018 | 60.00 | 69.38 | | Title Service Charge |
| Insurance Violation | 5/15/2018 | 25.00 | 94.38 | | No Ins. Certificate |
| Assessment | 6/1/2018 | 208.53 | 302.91 | | Assessment |
| Insurance Violation | 6/14/2018 | 25.00 | 327.91 | | No Ins. Certificate |
| Late Fee | 6/30/2018 | 3.13 | 331.04 | | Late Fee Processed |
| Assessment | 7/1/2018 | 208.53 | 539.57 | | Assessment |
| Insurance Violation | 7/15/2018 | 25.00 | 564.57 | | No Ins. Certificate |
| Late Fee | 7/30/2018 | 6.26 | 570.83 | | Late Fee Processed |
| Assessment | 8/1/2018 | 208.53 | 779.36 | | Assessment |
| Payment- CAB | 8/10/2018 | -836.44 | -57.08 | 2461 | MCPropMgmtCorpIL CABLB 081018.DAT |
| Insurance Violation | 8/15/2018 | 25.00 | -32.08 | | No Ins. Certificate |
| Assessment | 9/1/2018 | 208.53 | 176.45 | | Assessment |
| Insurance Violation | 9/13/2018 | 25.00 | 201.45 | | No Ins. Certificate |
| Assessment | 10/1/2018 | 208.53 | 409.98 | | Assessment |
| Insurance Violation | 10/15/2018 | 25.00 | 434.98 | | No Ins. Certificate |
| Late Fee | 10/30/2018 | 5.77 | 440.75 | | Late Fee Processed |
| Assessment | 11/1/2018 | 208.53 | 649.28 | | Assessment |
| Unit Owner Expense | 11/14/2018 | 75.00 | 724.28 | | General Common Expense: FC |

# West Ridge Village Condo Assn
MC Property Management Corp.
14224 McCarthy Road
Lemont, IL 60439

Yancy Aquino Calayag
441 Churchill Drive
Elgin, IL 60124

Property Address: 441 Churchill Drive
Account #: 29329

| | | | | |
|---|---|---|---|---|
| Insurance Violation | 7/17/2017 | 25.00 | 244.08 | No Ins. Certificate |
| Late Fee | 7/30/2017 | 2.90 | 246.98 | Late Fee Processed |
| Assessment | 8/1/2017 | 193.09 | 440.07 | Assessment |
| Insurance Violation | 8/15/2017 | 25.00 | 465.07 | No Ins. Certificate |
| Late Fee | 8/30/2017 | 5.79 | 470.86 | Late Fee Processed |
| Assessment | 9/1/2017 | 193.09 | 663.95 | Assessment |
| Insurance Violation | 9/14/2017 | 25.00 | 688.95 | No Ins. Certificate |
| Late Fee | 9/30/2017 | 8.69 | 697.64 | Late Fee Processed |
| Assessment | 10/1/2017 | 193.09 | 890.73 | Assessment |
| Legal Fee | 10/9/2017 | 50.00 | 940.73 | General Common Expense: ND |
| Legal Fee | 10/11/2017 | 180.00 | 1,120.73 | Review Ledger/Prep Notice |
| Legal Fee | 10/11/2017 | 60.00 | 1,180.73 | Title Service Charge |
| Legal Fee | 10/11/2017 | 18.00 | 1,198.73 | Bankruptcy search |
| Legal Fee | 10/11/2017 | 7.02 | 1,205.75 | Bankruptcy search |
| Insurance Violation | 10/13/2017 | 25.00 | 1,230.75 | No Ins. Certificate |
| Late Fee | 10/30/2017 | 11.59 | 1,242.34 | Late Fee Processed |
| Assessment | 11/1/2017 | 193.09 | 1,435.43 | Assessment |
| Insurance Violation | 11/15/2017 | 25.00 | 1,460.43 | No Ins. Certificate |
| Bank Fee | 11/28/2017 | 10.00 | 1,470.43 | Returned ck# 2475 - NSF |
| NSF Fee | 11/28/2017 | 30.00 | 1,500.43 | Returned pmt fee ck# 2475 - NSF |
| Legal Fee | 11/30/2017 | 120.00 | 1,620.43 | Prep and send 10-day letter |
| Late Fee | 11/30/2017 | 14.48 | 1,634.91 | Late Fee Processed |
| Assessment | 12/1/2017 | 193.09 | 1,828.00 | Assessment |
| Insurance Violation | 12/13/2017 | 25.00 | 1,853.00 | No Ins. Certificate |
| Late Fee | 12/30/2017 | 17.38 | 1,870.38 | Late Fee Processed |
| Assessment | 1/1/2018 | 208.53 | 2,078.91 | Assessment |
| Legal Fee | 1/2/2018 | 246.00 | 2,324.91 | Prepare Eviction Action |
| Legal Fee | 1/2/2018 | 240.00 | 2,564.91 | Initial Court Appearance, Jan 24, 2018. |
| Legal Fee | 1/2/2018 | 12.00 | 2,576.91 | Bankruptcy search |
| Legal Fee | 1/2/2018 | 234.59 | 2,811.50 | Clerk |
| Legal Fee | 1/2/2018 | 65.00 | 2,876.50 | Special Process Server |
| Insurance Violation | 1/15/2018 | 25.00 | 2,901.50 | No Ins. Certificate |

# West Ridge Village Condo Assn
MC Property Management Corp.
14224 McCarthy Road
Lemont, IL 60439

Yancy Aquino Calayag
441 Churchill Drive
Elgin, IL 60124

Property Address: 441 Churchill Drive
Account #: 29329

| Code | Date | Amount | Balance | Check# | Memo |
|---|---|---|---|---|---|
| | Balance Forward: | 0.00 | | | |
| Assessment | 12/1/2016 | 193.09 | 193.09 | | Assessment |
| Assessment | 1/1/2017 | 193.09 | 386.18 | | Assessment |
| Late Fee | 1/30/2017 | 5.79 | 391.97 | | Late Fee Processed |
| Assessment | 2/1/2017 | 193.09 | 585.06 | | Assessment |
| Insurance Violation | 2/15/2017 | 25.00 | 610.06 | | No Ins. Certificate |
| Homeowner Violation | 2/16/2017 | 25.00 | 635.06 | | No HO Info Sheet |
| Late Fee | 2/28/2017 | 8.69 | 643.75 | | Late Fee Processed |
| Assessment | 3/1/2017 | 193.09 | 836.84 | | Assessment |
| Legal Fee | 3/14/2017 | 50.00 | 886.84 | | General Common Expense: ND |
| Insurance Violation | 3/15/2017 | 25.00 | 911.84 | | No Ins. Certificate |
| Homeowner Violation | 3/16/2017 | 25.00 | 936.84 | | No HO Info Sheet |
| Legal Fee | 3/17/2017 | 180.00 | 1,116.84 | | Review Ledger/Prep Notice |
| Legal Fee | 3/17/2017 | 60.00 | 1,176.84 | | Title Service Charge |
| Legal Fee | 3/17/2017 | 18.00 | 1,194.84 | | Bankruptcy search |
| Legal Fee | 3/17/2017 | 7.02 | 1,201.86 | | Postage |
| Late Fee | 3/30/2017 | 11.59 | 1,213.45 | | Late Fee Processed |
| Assessment | 4/1/2017 | 193.09 | 1,406.54 | | Assessment |
| Homeowner Violation | 4/17/2017 | 25.00 | 1,431.54 | | No HO Info Sheet |
| Insurance Violation | 4/17/2017 | 25.00 | 1,456.54 | | No Ins. Certificate |
| Payment- CAB | 4/19/2017 | -701.86 | 754.68 | 2449 | 2449 |
| Payment- CAB | 4/19/2017 | -500.00 | 254.68 | 454768 | 454768 |
| Late Fee | 4/30/2017 | 2.90 | 257.58 | | Late Fee Processed |
| Assessment | 5/1/2017 | 193.09 | 450.67 | | Assessment |
| Dog Assessment | 5/9/2017 | 60.00 | 510.67 | | Dog Assessment |
| Insurance Violation | 5/15/2017 | 25.00 | 535.67 | | No Ins. Certificate |
| Payment- CAB | 5/16/2017 | -447.77 | 87.90 | 2508 | MCPropMgmtCorpIL CABLB 051617.DAT |
| Assessment | 6/1/2017 | 193.09 | 280.99 | | Assessment |
| Insurance Violation | 6/19/2017 | 25.00 | 305.99 | | No Ins. Certificate |
| Payment- CAB | 6/21/2017 | -280.00 | 25.99 | 312 | MCPropMgmtCorpIL CABLB 062117.DAT |
| Assessment | 7/1/2017 | 193.09 | 219.08 | | Assessment |

*THIS INSTRUMENT PREPARED BY AND SHOULD BE RETURNED TO:*

*Brian Meltzer*
*MELTZER, PURTILL & STELLE LLC*
*1515 East Woodfield Road*
*Second Floor*
*Schaumburg, Illinois 60173-5431*

2006K107617

2006K107617
SANDY WEGMAN
RECORDER - KANE COUNTY, IL
RECORDED:10/02/2006  01:09PM
REC FEE: 132.00 RHSPS FEE:10.00
PAGES: 60

MAP ATTACHED

**ABOVE SPACE FOR RECORDER'S USE ONLY**

09/21/06

# DECLARATION OF CONDOMINIUM OWNERSHIP FOR WEST RIDGE VILLAGE CONDOMINIUM

TABLE OF CONTENTS

**ARTICLE ONE**   Definitions .................................................................................................... 1
  1.01 ACT ........................................................................................................................ 1
  1.02 ASSOCIATION ..................................................................................................... 1
  1.03 BOARD .................................................................................................................. 1
  1.04 BUILDING ............................................................................................................ 2
  1.05 BY-LAWS ............................................................................................................. 2
  1.06 COMMON ELEMENTS ....................................................................................... 2
  1.07 COMMON EXPENSES ........................................................................................ 2
  1.08 COUNTY ............................................................................................................... 2
  1.09 DECLARANT ....................................................................................................... 2
  1.10 DECLARATION ................................................................................................... 2
  1.11 DESIGNATED BUILDER .................................................................................... 2
  1.12 DEVELOPMENT AREA ...................................................................................... 2
  1.13 DWELLING UNIT ................................................................................................ 3
  1.14 FIRST MORTGAGE ............................................................................................. 3
  1.15 FIRST MORTGAGEE .......................................................................................... 3
  1.16 LIMITED COMMON ELEMENTS ..................................................................... 3
  1.17 MEMORANDUM ................................................................................................. 3
  1.18 MUNICIPALITY .................................................................................................. 3
  1.19 NON-CONDOMINIUM PROPERTY .................................................................. 4
  1.20 OWNER ................................................................................................................. 4
  1.21 PARCEL ................................................................................................................ 4
  1.22 PERSON ................................................................................................................ 4
  1.23 PLAT ..................................................................................................................... 4
  1.24 PROPERTY OR CONDOMINIUM PROPERTY ................................................ 4
  1.25 RECORD ............................................................................................................... 4
  1.26 RESIDENT ............................................................................................................ 4
  1.27 TURNOVER DATE .............................................................................................. 4
  1.28 UNDIVIDED INTEREST ..................................................................................... 5
  1.29 UNIT OWNERSHIP ............................................................................................. 5
  1.30 VOTING MEMBER .............................................................................................. 5

{0034: 104: 00066153.DOC :7 }

NORTH AMERICAN TITLE CO.
373 S. COUNTY FARM RD [STE 100]
WHEATON, IL 60187

60

DOC 585 89
MAP = 53

PC
142

142
1

taking or condemnation. Any proceeds or awards paid to the Association shall be applied first to the cost of any restoration and any remaining portion of such proceeds or awards shall be, in the discretion of the Board, either (i) applied to pay the Common Expenses or (ii) distributed to the remaining Owners and their respective First Mortgagees, as their interests may appear, based on their current Undivided Interests. Each Owner appoints the Association as attorney-in-fact for the purpose of representing him in any condemnation proceedings or in negotiations, settlements and agreements with the condemning authority for acquisition of the Common Elements or any part thereof.

(b) In the event that part or all of one or more Dwelling Units is taken or condemned, then the portions so taken or condemned shall be deemed to have been removed from the provisions of the Declaration and the Act and the court which has jurisdiction of the action shall adjust the Undivided Interests of the remaining Dwelling Units in a just and equitable manner and as provided under the Act, and if the court fails to make such adjustment, such adjustment may be made by the Board. The President and Secretary of the Association shall execute and Record an instrument on behalf of the Association as required by the Act which amends this Declaration, effective as of the effective date of the taking or condemnation, to reflect the removal of property and adjustments, if any, in the Undivided Interests as a result of an occurrence covered by this Section. From and after the effective date of the amendment referred to in the preceding sentence, the Owner of a Dwelling Unit which is removed in part or in whole from the provisions of this Declaration shall only be liable for the payment of assessments based on the Undivided Interest, if any, allocated to the Dwelling Unit in the amendment.

## ARTICLE SIX
### Assessments

6.01 <u>CREATION OF LIEN AND PERSONAL OBLIGATION</u>: The Declarant, for each Unit Ownership, hereby covenants, and each Owner of a Unit Ownership, by acceptance of a deed therefore, whether or not it shall be so expressed in any such deed or other conveyance, shall be and is deemed to covenant and hereby agrees to pay to the Association such assessments or other charges or payments as are levied pursuant to the provisions of this Declaration. Such assessments, or other charges or payments, together with interest thereon and costs of collection, if any, as herein provided, shall be a charge on the Unit Ownership and shall be a continuing lien upon the Unit Ownership against which each such assessment is made. Each such assessment, or other charge or payment, together with such interests and costs, shall also be the personal obligation of the Owner of such Unit Ownership at the time when the assessment or other charge or payment is due.

6.02 <u>PURPOSE OF ASSESSMENTS</u>: The assessments levied by the Association shall be exclusively for the purposes of promoting the recreation, health, safety, and welfare of members of the Association, to administer the affairs of the Association, and to pay the Common Expenses.

6.03 <u>ANNUAL ASSESSMENT</u>: Each year at least sixty (60) days before the end of the Association's fiscal year, and at least thirty (30) days before final adoption thereof, the Board shall furnish each Owner with a proposed budget for the ensuing fiscal year which shall show the following, with reasonable explanations and itemizations:

{30034: 104: 00066153.DOC :7 }   21



(a) The estimated Common Expenses with an allocation of portions thereof for the payment of real estate taxes, if any;

(b) The estimated amount, if any, to maintain adequate reserves for Common Expenses;

(c) The estimated net available cash receipts from sources other than assessments, including, without limitation, amounts received pursuant to the Memorandum and receipts from any leases, licenses or concessions, if any;

(d) The amount of the "Annual Assessment", which is hereby defined as the amount determined in (a) above, plus the amount determined in (b) above, minus the amount determined in (c) above, minus excess funds, if any, from the current year's operation;

(e) That portion of the Annual Assessment which shall be payable by the Owner with respect to his Dwelling Unit each month until the next Annual Assessment or revised Annual Assessment becomes effective, which monthly portion shall be equal to one twelfth (1/12th) of the Annual Assessment multiplied by the Dwelling Unit's Undivided Interest.

6.04 <u>PAYMENT OF ASSESSMENTS</u>: On or before the first day of the fiscal year, and on or before the first day of each and every month thereafter until the effective date of the next Annual Assessment, each Owner of a Dwelling Unit shall pay to the Association, or as it may direct, that portion of the Annual Assessment, which is payable by such Owner. Anything herein to the contrary notwithstanding, prior to the first conveyance of a Unit by Declarant to a bona fide purchaser for value, all expenses relating to the administration, operation, maintenance, repair and replacement of the Condominium Property shall be paid by the Declarant and during such period there shall be no Annual Assessments or other assessments payable to the Association.

6.05 <u>REVISED ASSESSMENT</u>: If the Annual Assessment proves to exceed funds reasonably needed, then the Board may decrease the assessments payable under Section 6.03 as of the first day of a month by the giving of written notice thereof (together with a revised budget for the balance of the year and reasons for the decrease) not less than ten (10) days prior to the effective date of the decreased assessment.

6.06 <u>SPECIAL ASSESSMENT</u>: The Board may levy a special or separate assessment (i) to pay (or build up reserves to pay) extraordinary expenses incurred (or to be incurred) by the Association for a specific purpose including, without limitation, to make major repairs, additions, alterations or improvements to the Common Elements, or (ii) to cover an unanticipated deficit under the current or prior year's budget. If required under the Act, the special or separate assessment shall be approved by the requisite action of the Unit Owners. Each Owner shall be responsible for the payment of the amount of the special or separate assessment multiplied by his Dwelling Unit's Undivided Interest or, in the case of a special assessment for repairs, additions,

{30034: 104: 00066153.DOC :7 }            22



alterations or improvements to Limited Common Elements, in the shares provided for or chosen by the Board hereunder. The Board shall serve notice of a special assessment on all Owners by a statement in writing giving the amount and reasons therefore, and the special assessment shall be payable in such manner and on such terms as shall be fixed by the Board. Any assessments collected pursuant to this Section (other than those to cover an unanticipated deficit under the current or prior year's budget) shall be segregated in a special account and used only for the specific purpose set forth in the notice of assessment.

6.07 ANNUAL REPORT: Within a reasonable time after the close of the Association's fiscal year, the Board shall furnish each Owner with an itemized account of the Common Expenses for such fiscal year actually incurred or paid, together with an indication of which portions of the Common Expenses for such fiscal year were incurred or paid for capital expenditures or repairs or the payments of real estate taxes, if any, and with a tabulation of the amounts collected for the Annual Assessment and showing the net excess or deficit of income over expenditures, plus reserves.

6.08 CAPITAL RESERVE: The Association shall segregate and maintain a special reserve account to be used solely for making capital expenditures in connection with the Common Elements, including a reserve fund for replacements (the "Capital Reserve"). The Board shall determine the appropriate level of the Capital Reserve based on a periodic review of the useful life of improvements to the Common Elements and equipment owned by the Association as well as periodic projections of the cost of anticipated major repairs or improvements to the Common Elements or the purchase of equipment to be used by the Association in connection with its duties hereunder. The Capital Reserve may be built up by special assessment or out of the Annual Assessment as provided in the budget. Special accounts set up for portions of the Capital Reserve to be used to make capital expenditures with respect to the Common Elements shall be held by the Association as agent and trustee for the Owners of Dwelling Units with respect to which the Capital Reserve is held and such accounts shall be deemed to have been funded by capital contributions to the Association by the Owners. The budgets which will be adopted from time to time by the Board appointed by the Declarant prior to the Turnover Date shall include reserve buildups which the Board deems to be appropriate based on information available to the Board. Boards elected by the Owners of Dwelling Units after the Turnover Date may use different approaches from those used by Boards appointed by the Declarant for the buildup of reserves or as, permitted under the Act, may choose not to provide for the buildup of reserves for certain capital expenditures or deferred maintenance for repairs or replacements of the Common Elements. If the Board chooses not to provide for the buildup of reserves for a particular anticipated expenditure or if the buildup of reserves that the Board does provide for in its budgets does not result in sufficient funds to pay for the expenditure when the expenditure must be made, then (i) neither the Board nor any of its past or present members shall be liable to the Association or the Unit Owners for failing to provide for sufficient reserves and (ii) the Board shall have the right and power (subject to the procedural requirements of the Act, this Declaration or the Bylaws) to either levy a separate or special assessment to raise the funds to pay the expenditure or to borrow funds to pay the expenditure and repay the borrowed funds out of future Annual Assessments, separate assessments or special assessments.

6.09 <u>INITIAL CAPITAL CONTRIBUTION</u>: Upon the closing of the sale of each Dwelling Unit by the Declarant to a purchaser for value, the purchasing Owner shall make a capital contribution to the Association in an amount equal to three (3) monthly installments of the then current year's Annual Assessment for that Dwelling Unit and an amount equal to the current annual fire and extended coverage insurance premium allocable to the Dwelling Unit, which amounts shall be held and used by the Association for its working capital needs (and not as an advance payment of the Annual Assessment). In addition, the purchasing Owner shall pay to the Association the sum of One Hundred Dollars ($100.00), which shall be added to the Capital Reserve.

6.10 <u>NON-PAYMENT OF ASSESSMENTS</u>: Any assessments or other charges or payments which an Owner is required to make or is liable for hereunder which are not paid when due shall be deemed delinquent. If an assessment or other charge or payment is not paid within thirty (30) days after the due date, it shall bear interest from the due date at the contract rate permitted in Illinois, but not to exceed eighteen percent (18%) per annum, and the Board (i) may bring an action against the Owner personally obligated to pay the same, together with interest, costs and reasonable attorneys' fees of any such action, which shall be added to the amount of such assessment or other charge or payment and shall be included in any judgment rendered in such action and (ii) may enforce and foreclose any lien which it has or which may exist for its benefit. In addition, the Board may in its discretion charge reasonable late fees for the late payment of assessments or other charges. No Owner may waive or otherwise escape liability for the assessments or other charges or payment provided for herein by nonuse, abandonment or transfer of his Dwelling Unit.

6.11 <u>ASSOCIATION'S LIEN SUBORDINATED TO MORTGAGES</u>: The lien on each Unit Ownership provided for in Section 6.01 for assessments or other charges or payments shall be subordinate to the lien of any First Mortgage on the Unit Ownership Recorded prior to the date that any such assessments or other charges or payments become due. Except as hereinafter provided, the lien provided for in Section 6.01 shall not be affected by any transfer of title to the Unit Ownership. Where title to the Unit Ownership is transferred pursuant to a decree of foreclosure or by deed or assignment in lieu of foreclosure of a First Mortgage, such transfer of title shall to the extent permitted by law extinguish the lien for any assessments or other charges or payments under Section 6.01 which became due prior to (i) the date of the transfer of title or (ii) the date on which the transferee comes into possession of the Dwelling Unit, whichever occurs first. However, the transferee of a Unit Ownership shall be liable for his share of any assessments or other charges or payments with respect to which a lien against his Unit Ownership has been extinguished pursuant to the preceding sentence which are reallocated among the Owners pursuant to a subsequently adopted annual, revised or special assessment, and nonpayment thereof shall result in a lien against the transferee's Unit Ownership as provided in Section 6.01. If for any reason the Owner of a Dwelling Unit is permitted to remain in possession of his Dwelling Unit during the pendency of a foreclosure action with respect to the Dwelling Unit, the Owner shall be required to pay a reasonable rental for such right and the plaintiff in the foreclosure action shall be entitled to the appointment of a receiver to collect such rental.

{30034: 104: 00066153.DOC :7 }                    24



6.12 <u>STATEMENT OF ACCOUNT</u>: Upon seven (7) days' notice to the Board and the payment of a reasonable fee, if any, which may be set by the Board, any Owner shall be furnished with a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from the Owner as of the date of the statement. The statement shall be executed by a duly authorized officer or agent of the Association and shall be binding on the Association.

## ARTICLE SEVEN
### Remedies for Breach or Violation

7.01 <u>SELF-HELP BY BOARD</u>: Subject to the provisions of Section 7.03, in the event of a violation by an Owner of the provisions, covenants or restrictions of the Act, this Declaration, the By-Laws, or rules or regulations of the Board, where such violation or breach may be cured or abated by affirmative action, the Board, upon not less than ten (10) days prior written notice, shall have the right to enter upon that part of the Condominium Property where the violation or breach exists and summarily abate, remove or do whatever else may be necessary to correct such violation or breach, provided, however, that where the violation or breach involves an improvement located within the boundaries of a Dwelling Unit, judicial proceedings shall be instituted before any items of construction can be altered or demolished. Any and all expenses in connection with the exercise of the right provided by this Section shall be charged to and assessed against the violating Owner.

7.02 <u>OTHER REMEDIES OF THE BOARD</u>: In addition to or in conjunction with the remedies set forth above, in the event of a violation by an Owner of the Act, this Declaration, the By-Laws, or rules and regulations of the Board, the Board may levy reasonable fines or the Board or its agents shall have the right to bring an action at law or in equity against the Owner and/or others as permitted by law including, without limitation, (i) to foreclose a lien against the Unit Ownership, (ii) for damages, injunctive relief, or specific performance, (iii) for judgment or for the payment of money and the collection thereof, (iv) for any combination of the remedies set forth in this Article or (v) for any other relief which the Board may deem necessary or appropriate. Any and all rights and remedies provided for in this Article may be exercised at any time and from time to time cumulatively or otherwise by the Board in its discretion. The failure of the Board to enforce any provisions of this Declaration, the By-Laws or rules and regulations of the Board shall in no event be deemed a waiver of the right to do so thereafter.

7.03 <u>ENFORCEMENT BY THE BOARD</u>: Prior to the imposition of any fine and concurrently with the sending of the initial notices described in Section 7.01 and 7.02, the Board shall notify the Owner or Resident, as the case may be, in writing of the violation of the rule or regulation and the Board's proposed remedy. Any Owner or Resident who receives such notice may, within three (3) days after receipt of such notice, demand a hearing before the Board or its authorized committee. At such hearing a member of the Board shall present to the Owner or Resident the grounds for the notice and the Owner or Resident shall have an opportunity to challenge such grounds and to present any evidence on his behalf subject to such reasonable rules of procedure as may be established by the Board or its authorized committee, which rules shall adhere to the generally accepted standards of due process. If the Owner or Resident demands a hearing as herein provided, such hearing shall be held within four (4) days after the

{30034.104: 00066153.DOC :7 } 25

